IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 11, 2011

**TIMOTHY CARL JOHNSON, JR. v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for MauryCounty**
**No. 16810     Robert L. Jones, Judge**

**No. M2010-00346-CCA-R3-PC - Filed March 8, 2011**

The Petitioner, Timothy Carl Johnson, Jr., pled guilty to attempted second degree murder, theft of property valued over $1000, attempted escape, burglary, nine counts of burglary of a vehicle, and ten counts of theft of property valued under $500. The trial court sentenced him to eighteen years in prison. The Petitioner filed a petition for post-conviction relief in which he alleged he received the ineffective assistance of counsel. The post-conviction court dismissed this petition after a hearing. On appeal, the Petitioner contends his trial counsel was ineffective because he did not adequately investigate the case. After a thorough review of the record, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Robert C. Richardson, Jr., Columbia, Tennessee, for the Appellant, Timothy Carl Johnson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Michel T. Bottoms, District Attorney General; Daniel J. Runde, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I. Facts**

**A. Guilty Plea Hearing**

This case arises from a string of burglaries the Petitioner committed during the night of December 13, 2006, while the Petitioner, who had recently turned eighteen, was living in a halfway house. A Maury County grand jury indicted the Petitioner for: Count 1, attempted first degree murder; Count 2, aggravated assault; Count 3, theft of property valued over $1000; Count 4, felony escape; Counts 5 through 13, automobile burglary; Count 14, aggravated burglary; and Counts 15 through 24, theft of property valued under $500. At the Petitioner's plea hearing, the State summarized the evidence supporting the Petitioner's plea submission as follows:

> [T]h[e] [Petitioner], along with Mr. Rector, were at a halfway house-type facility . . . and they apparently left that facility. . . .
>
> They left that house on the night of December 13 and 14, and thereupon committed a string of auto burglaries and/or breaking into a shed or two. They took numerous items. Ended up going back to that house with a lot of these various items, whereupon the folks at that rehab. facility/halfway house . . . discovered them and/or these items, there, contacted the police, whereupon Aaron Davis, as the detective got hold of both Mr. Rector and [the Petitioner], here.
>
> They basically gave statements, and Aaron Davis then put them in the backseat of his detective's car, that is furnished by the Sheriff's Department. And he began to ride around with them . . . . [T]hey drove around and were pointing out the various places that they had burglarized, and the police were making contact with the victims, inventory lists, and that sort of thing, as I understand it.
>
> At some point, the State would allege that this [Petitioner], . . . along with his cohort, had decided that they were going to make an escape try. For whatever reasons, in the back seat of Aaron Davis' vehicle, was a device that is made out of metal, that one uses to cover and to lock a trailer hitch. It is a steel-type device that, in this case, weighed around 3.3 pounds, or thereabouts. This [Petitioner], while Aaron Davis was driving, struck Aaron Davis in the side of the head. There was a struggle. Aaron Davis got out of the vehicle. . . . [The Petitioner] then got behind the wheel. . . .
>
> Aaron Davis got on the hood of the vehicle, tried to get the vehicle to stop. And he was either thrown off the vehicle or he . . . allowed himself to

fall off the vehicle.

> This [Petitioner] then drove the vehicle on down the road, and a gentleman by the name of Mr. Sharp came along and picked up Aaron Davis, and they then had a pursuit with him, and ultimately, within a couple of miles of them taking the vehicle from Aaron Davis, they crashed. . . .

> The vehicle flipped over. Both Mr. Rector and this [Petitioner] were kind of trapped in the vehicle. Aaron Davis took measures to get them out of the vehicle or to try to secure their safety.

The State informed the trial court that, due to the injuries that detective Aaron Davis sustained from the attack, he was no longer able to serve in a law enforcement capacity. The blow to his head damaged his inner ear, leading to periods of vertigo. The State also informed the trial court that, because the Petitioner was on bond at the time that he committed the offenses in this case, the State could have pursued consecutive sentencing had it taken the case to trial.

In accordance with the plea agreement, the Petitioner pled guilty in Count 1 to the lesser-included offense of attempted second degree murder; the State dismissed Count 2; and the Petitioner pled guilty to theft of property valued over $1000 in Count 3 and to the lesser-included offense of misdemeanor attempted escape in Count 4. The Petitioner also pled guilty to the nine counts of automobile burglary and, in Count 14, to the lesser-included offense of burglary. Finally, the Petitioner pled guilty, in Counts 15 through 24, to all ten counts of theft of property valued under $500. The parties agreed to a sentence of eighteen years, to be served as a Range I offender at thirty percent.

### B. Post-Conviction Facts

The Petitioner filed a petition for post-conviction relief in which he alleged he received the ineffective assistance of counsel. The post-conviction court held a hearing on the petition, during which the following evidence was presented: The Petitioner testified he was, at the time of the hearing, incarcerated in the custody of the Tennessee Department of Correction and eligible for parole in May of 2011. The Petitioner testified that, had his case gone to trial before he pled guilty, he faced a potential prison term between forty-four and seventy-three years and that two other charges against him, reckless endangerment and aggravated assault, had been dismissed in exchange for his guilty plea.

The Petitioner testified that he first met the attorney who represented him at the guilty plea hearing ("Counsel") on December 16, 2006, before his case was heard in General

Sessions Court. He was in the Maury County jail when the two met, and the Petitioner recalled that they "got along just fine." The Petitioner, however, felt that Counsel did not adequately represent him because she did not attempt to "fight for the case on me." The Petitioner felt that Counsel could have successfully defended his charge of attempted first degree murder, in part because his co-defendant was a witness to the events surrounding this charge and could have testified on the Petitioner's behalf.

The Petitioner testified that he and Counsel spent only "a couple of hours" discussing his case and that the two discussed the elements the State must prove for him to be found guilty of the charges against him and also the elements of the lesser-included offenses. Counsel also provided to and went over with the Petitioner the discovery materials the State provided. The Petitioner said Counsel asked him if his statement to police was "coerced" and he told her that it was not but that he felt like he was "tricked" because the police insinuated that his giving a statement would "help" him. The Petitioner said that, because he did not try to murder the detective, Counsel should have fought to reduce his attempted second degree murder charge to reckless endangerment or aggravated assault.

The Petitioner said both Counsel and the trial court explained to him that he did not have to plead guilty. He said he was worried, however, about the attempted first degree murder charge, which was the charge he wanted to "get rid of." The Petitioner said he did not attempt to kill the detective. He recaleld that he chose not to knock the detective from the hood by swerving or braking quickly because he did not want to kill the detective.

The Petitioner said that he did not want to plead guilty but that Counsel scared him when she said that, if he did not accept the plea offer, he would face forty-four years in jail if found guilty and sentenced concurrently. When asked what Counsel should have done differently, the Petitioner responded Counsel should have "fought for [him]." The Petitioner said if she had done so, he would have gone to trial.

On cross-examination, the Petitioner acknowledged that during the guilty plea hearing he told the trial court he was satisfied with Counsel's representation but insisted that he was not actually satisfied at the time. He reiterated that Counsel should have "fought" the attempted murder charge.

The Petitioner explained the circumstances surrounding the attempted murder charge. He said that, when the detective briefly exited the car, the Petitioner and his co-defendant agreed they would use a trailer hitch to hit the detective in the back of the head to knock him unconscious. The Petitioner said he then used the hitch to hit the detective in the mouth, which hurt the detective but did not render him unconscious. The Petitioner was able to force his way into the front seat. The Petitioner denied ever attempting to reach for the

-4-

detective's gun, but he conceded that the detective might testify otherwise. The Petitioner agreed that the detective got onto the hood of the car in an attempt to stop the Petitioner and that he continued driving for some distance, maybe as much as 260 feet, before the detective fell off of the car. The Petitioner said a jury may have found him guilty of attempted first degree murder for these actions, but he emphasized that he refrained from taking other actions, such as hitting the detective with the hitch again or braking quickly to sling the detective from the car, that would have killed the detective.

The Petitioner agreed he met with Counsel "several" times and that the two went over discovery together. He said he asked Counsel to pursue a plea bargain. He said, however, that when Counsel informed him that the State was offering eighteen or nineteen years, he no longer wanted to plead guilty. The Petitioner stated that, while Counsel "did her job," she did not "fight" for him.

On redirect examination, the Petitioner explained that, when he said Counsel did her job, he meant that she did what "any second rate lawyer could[] [have] done."

Upon questioning from the court, the Petitioner testified that he decided that he did not want to plead guilty after he entered his guilty plea. He clarified it was not long after he pled guilty that he decided that he should have taken his case to trial. He reiterated that Counsel was ineffective because she did not challenge his attempted first degree murder charge more vehemently.

Counsel testified that she was assigned as a public defender to represent the Petitioner and that she first began representing him before his preliminary hearing. Counsel testified that, after the preliminary hearing, she knew that the Petitioner's case was going to be difficult to successfully defend. She found the detective's testimony damaging, saying that he testified that the Petitioner had struck him and knocked out his tooth and driven more than 260 feet while the detective was still on the hood of the car.

Counsel testified she requested and obtained discovery materials in this case, which she reviewed with the Petitioner. She played the tape recordings of the Petitioner's statement for him. Counsel said the State's case did not have many "weak places." Counsel recalled that the testimony proved that the Petitioner and his co-defendant planned to hit the officer in the head with the ball joint. Further, the officer testified at the preliminary hearing that the Petitioner reached over the seat for the officer's gun. While the Petitioner intended to testify that he was not reaching for the gun, she thought this testimony might not persuade a jury.

Counsel agreed that the Petitioner told her that he did not think his actions constituted

-5-

attempted first degree murder but said she explained to him that taking the case to trial was "risk[y]" considering the amount of evidence against him. Counsel said this was true, in part, because the Petitioner's co-defendant intended to testify against him. Counsel was also concerned about the admissibility of the Petitioner's statements to police. She hoped to be able to suppress these, but the Petitioner told her that he "wanted" to make the statements to police because he thought they would help him, so she did not think she could successfully move to suppress the statements. Counsel nonetheless prepared a motion to suppress the Petitioner's statements, as well as a motion in limine and a motion to sever. She never filed any of these motions because the Petitioner ultimately pled guilty.

Counsel testified that, because the Petitioner admitted to the burglaries he was charged with committing, she did not speak to all of the burglary victims.

Counsel described how she was able to negotiate a plea bargain in this case. She said she informed the Petitioner plea negotiation was imperative because the Petitioner would be "hurt" at a trial. Counsel said she repeatedly asked the prosecuting attorney for an offer of settlement, and he eventually offered a nineteen-year sentence. She relayed this offer to the Petitioner, and the two discussed the offer and the ramifications thereof several times before he accepted the plea offer a week later.

On cross-examination, Counsel explained that she first began representing the Petitioner when he was charged with the aggravated assault of his father and theft of property valued over $1000. After the Petitioner made bond on these charges, he moved into the halfway house where he was living when he committed the crimes in this case. Because the Petitioner was on bond when he committed the charges in this case, he faced the prospect of mandatory consecutive sentencing on all of the burglary charges. As part of the plea agreement, the State agreed not to prosecute the initial aggravated assault and theft charges and also agreed not to require that all the burglary sentences run consecutively.

Counsel testified that, when she first approached the prosecuting attorney for a settlement offer, he was not interested in a plea negotiation and wanted to take the case to trial. She implored him "[e]very time [she] saw [him]" to think of the Petitioner's youth. The prosecutor maintained that a trial was necessary because this case involved an assault of an officer who had been forced to end his law enforcement career as a result of the injuries sustained from the assault. Eventually, the prosecutor offered a nineteen-year sentence, which she later was able to reduce to an eighteen-year sentence. Counsel said that, when she relayed this offer to the Petitioner, he seemed "happy" and indicated he wanted to accept the offer.

Counsel testified that she met with the Petitioner on multiple occasions and recalled

that the two had three meetings that lasted one-and-a-half hours, two hours, and three hours, respectively. They also had multiple phone conversations, and her associate also met with him.

At the conclusion of the hearing, the trial court dismissed the Petitioner's petition for post-conviction relief. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that his Counsel was ineffective because she met with him for only two hours on his case and because she did not inquire into the facts of the case in a way that enabled him to make an intelligent and informed decision about his options. He asserts that, had she been more diligent, he would have proceeded to trial. The State counters that Counsel adequately investigated the case and that the Petitioner's guilty plea was entered knowingly and voluntarily.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2006). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2006). Upon our review, the trial judge's findings of fact are given the effect and weight of a jury verdict, and this Court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." *Black v. State*, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Thus, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony and the factual issues raised by the evidence are to be resolved by the trial court judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999); *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997). A post-conviction court's conclusions of law, however, are subject to a purely de novo review by this Court, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 457 (Tenn. 2001).

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not

functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Strickland*, 466 U.S. at 688).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court must evaluate the questionable conduct from the attorney's perspective at the time. *Strickland*, 466 U.S. at 690; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). In doing so, the reviewing court must be highly deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n. 38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). The fact that a particular strategy or tactic failed or hurt the defense does not, standing alone, establish unreasonable representation. *House*, 44 S.W.3d at 515 (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation. *House*, 44 S.W.3d at 515.

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To do so, he must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see Hicks v. State*, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998). In the context of ineffective assistance of counsel that resulted in a guilty plea, the petitioner is not required to present evidence that he likely would have fared better at trial than he fared by pleading guilty, although such evidence may also demonstrate that he would have insisted on his right to a jury trial. *See Hill*, 474 U.S. at 59. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Strickland*, 466 U.S. at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When denying the Petitioner's petition for post-conviction relief, the post-conviction court found:

> [The Petitioner] vehemently expresses an opinion that his trial counsel, [Counsel], should have done more for him and should have gotten him a better result. But that's merely the opinion of someone that has no college work, no law school training. He doesn't point to any facts of what she failed to do. He says that she should have spent more time with him and maybe that's a fact in support of his contention. But it's clear that his recollection of the time she spent with him is not correct. Her two inch file and her enumeration of the numbers of occasions that they met and talked about this case, communicated by mail and other things shows that she was spending a lot more time than he thinks, even with him, but especially on the case in general. Negotiating with the State's counsel, reviewing discovery, preparing motions, and getting this more serious case involving the attack on the officer severed so that that case could be tried without being – without too much of the evidence about the burglaries coming in and being too prejudicial before the jury. And that he, in fact, was ready for a two day trial when he changed his mind and decided to

plead guilty.

What this case boils down to is a case of which in the marketplace you'd probably call buyer's remorse. He's not sure he likes that used car six months or a year after he decided to buy it. He didn't have any complaints while he was still in the county jail waiting for a bed in the state penitentiary. He never communicated with [Counsel] about his dissatisfaction with the settlement after the fact. The transcript, Exhibit 1, of the plea shows that instead of [the Petitioner] standing in the line with some eight or ten defendants plea[d]ing from everything from simple assault and DUI to attempted second-degree murder, that was not the situation either. He had the Court's undivided attention as reflected in the 35-page transcript in Exhibit 1, where he answered untold number of questions about his understanding of his various rights, his satisfaction with his counsel. He's tried to tell the Court today that he did not say he was satisfied. But he clearly, on page 11, said expressly that he was satisfied. He has, therefore, failed to show clear and convincing evidence based on facts of any ineffective assistance of counsel, which is the primary ground upon which he and his present counsel have chosen to rely in today's hearing.

. . . .

[The Petitioner] alleges that his actions did not constitute attempt to commit first-degree murder. And the Court and his trial counsel recognize[] that, yes, he had a legitimate, triable issue about whether he had the specific intent to kill Officer Davis. There is a possibility that the jury would have concluded that it was an attempt to commit second-degree murder. Aggravated assault was a second count in the indictment and not a lesser included offense of attempted first-degree murder as has been held a number of times by our appellate courts. The Judge, therefore, could not have charged the jury in Count 1 with aggravated assault as a lesser included offense. And a jury could have been, as [Counsel] surmised, extremely reluctant to have returned a not guilty verdict on Count 1. Essentially, their choices would have been attempted first-degree or attempted second-degree. And [the Petitioner] indicates that, today, he would be willing to take his chances with the jury on that issue. But he also got a rather favorable settlement on all these other counts so that all the other counts were, in effect, packaged into an additional six years to run consecutive to the 12 years he was taking on the attempted homicide.

You can rationalize and theorize about different outcomes of this case had all these counts gone to trial. And it might have come out at more than 18 years or it might've come out at less than 18 years. But that's not grounds for post-conviction relief. He can't show factually that his counsel was ineffective. She's well qualified according to this record. She's experienced a number of years in handling a lot of serious cases. He alleges also in his pro se petition that she failed to properly investigate the case and research the statute, which she clearly understood the intent and mental culpability factors involved in the offense for which he was charged – Count 1 offense for which he was charged and the Count 1 offense as modified to which he pled. And, sure enough, even though they discussed possible suppression of his incriminating statements, he concedes here today that there wasn't much dispute about his guilt of the burglary convictions. The State would have easily convicted him of those. And her failure to file a motion to suppress would not have been successful. He alleges that, in likelihood, it would have been successful, but that's not true. There's nothing in this record to suggest that they had any grounds for suppressing that statement. He might have been young and inexperienced at the time but there's nothing to suggest that he lacked the intelligence and capacity to understand what the officer was talking about with regard to the rights that he waived before giving a statement. Therefore, as I say, this is merely a case of hindsight re-evaluation by someone that has second thoughts about the settlement agreement he made. It's not his counsel's fault and he doesn't have any legal grounds for relief.

After a thorough review of the record, applicable authorities, and the post-conviction court's findings, we conclude that the Petitioner is not entitled to relief because he has not proven that his counsel was ineffective or that he was prejudiced. Counsel testified that she met with the Petitioner on multiple occasions, several of which lasted for hours, and that she spent a great amount of time attempting to settle his case. After the preliminary hearing, Counsel became concerned by the strength of the State's case, and she informed the Petitioner of this fact. He asked her, both verbally and in writing, to seek a plea negotiation, which she did. Counsel said the Petitioner seemed satisfied with his plea deal. The Petitioner expressed to the trial court during the plea submission hearing that he was satisfied with Counsel's representation and with the outcome of his case. The Petitioner's bare allegation that Counsel should have fought harder for him does not support his allegation of ineffective assistance of counsel.

Further, the Petitioner has not shown prejudice because he cannot prove that "but for" Counsel's alleged errors he would have gone to trial. Because the Petitioner was on bond at the time that he committed the offenses in this case, he faced mandatory consecutive

sentencing for all of the offenses committed. Even without consecutive sentencing, he faced a potential punishment of forty-four to seventy-three years in prison. He testified that he was concerned about such a long sentence, about the possibility the jury would believe the detective's testimony that he reached for the detective's gun, and about the weight of the evidence against him. He has not shown that, in the face of the evidence against him, he would have insisted on going to trial if Counsel had "fought" harder for him.

## II. Conclusion

After a thorough review of the record and the applicable law, we conclude the record supports the post-conviction court's dismissal of the Petitioner's petition for post-conviction relief. As such, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE